The first case to be heard is 18-3736, Mendoza-Mira v. Wilkinson. We'll hear from Mr. Fasano. Good afternoon, your honors. May it please the court, my name is Ray Fasano. I'm representing the petitioner Sonia Mendoza-Mira. This case gives us an opportunity to tie in three decisions that I believe are not only instructive, but I think they actually dictate the outcome of this case with respect to when does harassment and physical mistreatment rise to the level of persecution for asylum purposes. The three cases are Bescovich, Matter of Ozzie and Izzie, and Ivan Vesvilli. Bescovich and Ivan Vesvilli are cases from this court. What happened in this case is whether the threats, the beatings after Ms. Mendoza's political speech, whether the constant, non-stop harassment that she received over the phone while she worked for the PDC, the Christian Democratic Party, as a secretary. She received non-stop threatening phone calls on her personal phone and on her office phone threatening her to, number one, stop her political speech. She was an outspoken opponent to the Arena Party, A-R-E-N-A, and they also wanted from her the names and phone numbers of members and officers of the PDC. The mistreatment that she received rose to the level of persecution when she was confronted by members of the Arena Party at a bus stop, and while at gunpoint, when the gun was pointed to her head, these members for 15 minutes beat her on account of her political opinion, and later on they caused hot wax to be poured on her foot that caused third-degree burns and eventually forced her to flee her native El Salvador. When preparing for this case, I couldn't help but be drawn to the hate crime statutes that we have in the United States. As this Court is probably well aware, in Wisconsin v. Mitchell, which is not in my brief but I can offer a 28-J letter addressing the applicability of Wisconsin to this case, the Supreme Court back in 1992 upheld a sentence enhancement for hate crimes. Now, if an individual commits an assault, and with that assault it's accompanied with a racial slur, it's no longer an assault, it is now a hate crime, and hate crimes are subject to a sentence enhancement on account that they have a broader effect than most kinds of crimes. Hate crime victims don't only include the actual victim that's targeted in the assault, but also their communities, their families, and at times an entire nation. Hate crimes have a sentence enhancement because of the degradation and humiliation to which  Here, I want to show the Court the applicability or analogy of hate crimes to an assault, and in this instance, when does harassment rise to the level of persecution when it's accompanied by physical abuse? The rule that I respectfully submit that this Court has an opportunity to tie in the three and offer a new rule to practitioners, which is the following. Your initial three minutes have expired. Thank you. When mistreatment by a persecutor... Hold on one second. Let me ask my colleagues if they have any questions for you. Judge Kearse. Not at this point, thank you. Judge Pooler. Well, I'd like to hear the end of Mr. Fusano's statement, and then I do have a question. Go ahead, Mr. Fusano. Thank you, Judge Pooler. Thank you, Judge Cabranes. The rule that I want this Court to enunciate in the remand is the following. When the mistreatment to which the asylum applicant suffered was on account of her political opinion, and here, her persecutor's mistreatment of her was motivated to overcome a protected ground. As we argued in our brief, the context within which the mistreatment occurred was Ms. Mendoza's political opinion. So, these three cases that I mentioned in this Court over the years when it addresses when does mistreatment rise to the level of persecution, always wrestles with the idea of when does harassment rise to the level of persecution. I'm ready to ask the question now, counsel. I just meant the sentence you were in the middle of. Are you arguing that this petitioner's activities with the PDC is a nexus to a protected ground? I do, Your Honor. The protected ground would be political opinion, and here's why. I could give you at least two examples of where she manifested her political opinion of which her persecutor was aware. Number one, when the Arena Party members kept calling her, they wanted the names and numbers of the officers in the PDC. Her refusal to hand over that information was tantamount to her protection of the PDC Party. That could be viewed as an imputed political opinion because she was not a sentent to the PDC Party being the Arena. That's number one. Number two, her actual political opinion is in the record where at political functions she actually spoke out against the Arena Party. As Your Honor would recall, in the Statement of Facts, we highlight where the phone calls that she received threatened Ms. Mendoza to stop her outspoken speech against the Arena Party. I don't think there's any sort of leap in logic or stress with which we have to wrestle to find a political opinion, so I believe that that was her political opinion. The BIA did not treat it as a protected ground, but only treated her as an employee of the PDC. Is that incorrect? Well, if I understand Your Honor's question, you are correct that the board treated Ms. Mendoza as a mere employee who had administrative duties with the PDC. They did not interpret her conduct as political opinion, despite the fact that the Arena Party members actually told her the reason why they were mistreating her was on account of her speech where she was outspoken against the Arena Party. Excuse me, you have a minute. Pescovitz teaches us that we have to look at any persecution in terms of its context, and as I understand your argument, you are telling us that she was mistreated, persecuted on behalf and because of her opinion. Is that correct? Yes, Your Honor. All right. Thank you. Thank you. I've reserved two minutes for rebuttal, so I'm going to cease my time to my adversary. Thanks very much. We'll hear from Ms. Seymour. May it please the court, Mel Seymour on behalf of the Attorney General. In this case, the petitioner is ineligible for asylum and withholding of removal because she failed to establish past persecution or that her fear of future harm is objectively reasonable. And I'm going to pause there to say that those are both independent and dispositive grounds for denying relief and protection from removal. And although a opposing counsel has raised arguments about nexus, the board clearly did not affirm the immigration judge's opinion on that ground, so it's not properly here before the court. What is before the court is whether or not the mistreatment that she suffered rises to the high level that is, although not defined in the INA, is explained through case law what amounts to persecution. And here, petitioner's claim is based on two instances of physical harm and numerous threats that she received from members of the opposing party that wanted human resource information that she had access to as a secretary for her party, the PDC. And the government's position, Your Honors, is that even considered in the aggregate, the record does not compel the conclusion that Ms. Mendoza suffered mistreatment so severe as the constitute persecution. And as I think we've already touched upon today, an analysis about whether or not something rises to the level of persecution is based on the facts and circumstances of the specific case, and it is context-specific. Here, the agency clearly reviewed the record as a whole and applied the definition of persecution that can be surmised from case law as the facts of this case. And the record doesn't compel but the conclusion that the agency's decision to deny relief was incorrect. Petitioner bore the burden of proof and persuasion here, and the record in this case lacks specificity and detail about what the threats that she received were. It's unclear whether she was threatened with death every time and how imminent and menacing the threats were. And persecution is meant to be an extreme concept that simply at bottom is not present in this case. The government would also address that although whether or not her fear of future harm is objectively reasonable has been waived before the court, it is still supported by substantial evidence in the agency's decision. And petitioner failed to establish that her fear was supported by the record, and the government's position would be that it's speculative at best, as given the evidence that she submitted, namely reports, letters, news articles, and her testimony. There's nothing really to show that members of PDC are specifically targeted, let alone that she would be singled out for persecution. The government would also note that the record is devoid of evidence that they're even looking for her anymore. I believe her testimony was at the last time anyone asked after her was 2015, and that testified that the last threat she received was in October of 2013. There's no objective evidence to explain why after all of these years, they would still be looking for her. And given that her claim of past mistreatment is based on the human resource information that she had access to, that would now be extremely old. So in conclusion, your honors, the record simply does not compel the conclusion that Ms. Mendoza suffered harm that rises to the level of persecution. And as a separate and independent ground for denying her application for asylum and withholding of removal, Ms. Mendoza also failed to establish a well-founded fear of future harm. I'll turn to my colleagues and ask if they have any questions. Judge Kearse? No questions, thank you. Judge Pooler? Yes, I have a couple of questions. Is the Arena Party still dominant in El Salvador today? I actually don't know the answer to that, your honor. I apologize. So you suggested that it would be such a long time that they wouldn't still be interested in her, but you do not know that for a fact. Well, at the time that she suffered the mistreatment, her party, the PDC, was in power in her municipality. And she had said that they had always been in power, the PDC. So the Arena wasn't in power when she was contacted previously. And you don't know... And she no longer works. Excuse me, you don't know what the situation is today. So we can't assume that just because it's a few years ago, the threat has disappeared. Isn't that correct? I don't know who is holding office, but I do know that she no longer works for the PDC and she hasn't since 2013. So I'm not sure those are mutually exclusive, your honor. I think the government's point that she would no longer have valuable information about the PDC party still holds true. Thank you. I have no further questions. I think then we can turn to Mr. Fasano, who has reserved two minutes. Thank you, Judge Cabranes. To answer Judge Pula's question, the Arena party is in fact still a political force in El Salvador. In fact, that would also be an independent basis for a remand in this case to see what threat at this time the Arena party would pose to Ms. Mendoza. But I would submit that she's already satisfied her burden of showing past persecution, which creates a presumption of a well-founded fear of future persecution. So it would be the government's burden to demonstrate that her fear is no longer reasonable. I just want to ask the question of the court, would the court benefit by a 28-J letter from how I want to tie in sentence enhancements on hate crimes as relate to the context within which mistreatment that Ms. Mendoza suffered rises to the level of persecution? Yes, if you, Mr. Fasano, if you would like to submit something, you should feel free to do it. How much time do you require? Your honor, may I have two weeks? I could do it sooner than that, but I would appreciate two weeks if possible. Well, it's a bit of time, but let's see. I could take less time, your honor, at the court's convenience. Okay, so let's, why don't we make it one week? Why don't we make it Wednesday, April 21 by 12 noon, and you would submit it electronically to the court with copies to the government. Then the government will have the opportunity to respond up to Monday, April 26 at 12 noon. Thank you, your honor. Now, the point I want to make, and this ties back into Judge Poole's question of me the application of sentence enhancements on hate crimes that would take a simple assault and enhance it to a hate crime is directly applicable in the persecution context, because the context within which Ms. Mendoza suffered this persecution was on account of her political opinion. And I just want to direct the court to page 71 of the administrative record when Ms. Mendoza testified to the following. Answering the question, you know, what was told, asked of you, or said to you in the threats, the following, to stop attacking them or speaking not well of them, because I would speak and about the form of the way of their political ideas. I'm just reading directly from the transcript. So there is no issue with, as I could see, and I don't understand how the board reached its conclusion that she wasn't able to show the nexus when in fact she manifested her treatment on account of her manifest in her political opinion. If the court has no further questions, I will conclude there. Fine. Thank you, Mr. Fasano. Before we turn to the next case, I might as well indicate to Ms. Seymour that she'll have time to, in her letter, to perhaps respond to Judge Poole's inquiries regarding current conditions in El Salvador. I mean, I think I know what those conditions are based on simply taking judicial notice of the daily press, but Ms. Seymour should feel free to provide whatever information she thinks would be useful to Judge Poole in response to her question. And Mr. Fasano should feel likewise free to include in his supplemental letter whatever information he thinks is appropriate. Your Honor, if I may, just responding to that, would the court be satisfied with just links to the internet or would you like to have an attachment to the 28J? Links would be fine. I appreciate it, Your Honor. Thank you. Thank you very much.